IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

August 08, 2023 03:32 PM
ST-2016-CV-00410
**TAMARA CHARLES
CLERK OF THE COURT**



**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| DR. TYLUR ARVIDSON and DR. TYGUE ARVIDSON, individually and derivatively on behalf of VI CHIROPRACTIC, LLC,<br><br><br>Plaintiffs,<br><br>vs.<br><br>DR. WILLIAM L. BUCHAR and VI CHIROPRACTIC, LLC,<br><br>Defendants.<br>VI CHIROPRACTIC, LLC,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>DR. TYLUR ARVIDSON and DR. TYGUE ARVIDSON,<br><br>Third-Party Defendants. | ) CASE NO. ST-2016-CV-00410<br>)<br>) ACTION FOR BREAH OF FIDUCIARY<br>) DUTY, ACTION TO DETERMINE<br>) DISTRIBUTIONAL INTEREST AND<br>) ENFORCE PURCHASE OF INTEREST<br>) AND DERIVATIVE ACTION<br>)<br>)<br>)<br>) COUNTERCLAIM IN<br>) CONTRACT AND TORT<br>)<br>)<br>)<br>) ACTION IN CONTRACT<br>) AND TORT, JOINDER REQUEST<br>)<br>)<br>)<br>)<br>)<br>) |

Cite as 2023 VI Super 46U

## <u>MEMORANDUM OPINION AND ORDER</u>

¶1    **THIS MATTER** is before the Court on

1.    Defendant's Motion To Compel Responses To Certified Deposition Questions And For Sanctions ("Motion"), filed June 19, 2020;

2.    Plaintiffs' Opposition To Motion To Compel Responses To Certified Deposition Questions And For Sanctions ("Opposition"), filed July 6, 2020;

3.    Leigh Goldman's Uncontested Motion To Extend Time For Response, filed July 7, 2020;

4.    Defendant's Reply In Support Of His Motion To Compel Leigh Goldman Esq.'s Responses To Certified Deposition Questions And For Sanctions, filed August 10, 2020 ("Reply"); and

5.    Leigh Goldman's Response To Defendant Buchar's Motion To Compel Responses To Certified Deposition Questions And For Sanctions ("Goldman's

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 2 of 15

2023 VI Super 46U

Response"), filed August 28, 2020.

¶2     The Court will grant in part and deny in part Defendant's Motion after identifying which certified questions are discoverable. The Court will not compel Attorney Leigh Goldman to sit for another deposition but, rather, will allow Plaintiffs to submit written interrogatories to Goldman with the questions that are not privileged, consistent with the Court's previous December 5, 2018 Order. The parties' movement for sanctions will be addressed in another Order.

## I.     INTRODUCTION

¶3     On July 12, 2016, Plaintiffs Dr. Tylur Arvidson and Dr. Tygue Arvidson (the "Arvidsons") filed suit against Dr. William L. Buchar ("Buchar") alleging a breach of fiduciary duty. Principally, the Arvidsons allege that Buchar unilaterally dissolved a medical business both Buchar and the Arvidsons had been engaged in order to avoid paying the Arvidsons for their interest in the company and that this violated Buchar's fiduciary obligations to the Arvidsons.[1] On October 4, 2016, Buchar responded with Defendant's Answer, Affirmative Defenses, Counterclaims, Action For Contribution And VI Chiropractic LLC's Complaint Against Plainttifs [sic] And Request To Join The Action ("Answer"), which added VI Chiropractic, LLC ("VI Chiropractic") as a party and asserted several counterclaims against the Arvidsons: 1) Necessary Joinder; 2) Breach of Contract; 3) Breach of Implied Covenant of Good Faith and Fair Dealing; 4) Tortious Interference with Contractual Relations; 5) Defamation (Libel); 6) Collusion; 7) Unjust Enrichment; 8) Fraud; 9) Contribution; and10) Action for Injunction.[2] By Order issued on March 5, 2018, the Arvidsons were granted leave to file their First Amended Verified Complaint which alleged the following causes of action:  Breach of Fiduciary Obligations (Count I); Action to Determine Distributional Interest and Enforce Purchase (Count II); and Derivative Action for Breach of Duties of Loyalty and Care (Count III).

¶4     Buchar moves to compel a third-party, Attorney Leigh Goldman ("Goldman"), to respond to certified deposition questions, as well as for sanctions.[3] Goldman was the attorney who represented the Arvidsons and was identified as a potential witness at trial.[4] Goldman, along with retained counsel Attorney Weiss ("Weiss") and the Arvidsons' current counsel, attended a deposition on December 10, 2019, during which Goldman was advised to refuse to answer questions on the basis of attorney-client privilege, and Goldman did refuse to answer the questions.[5] Buchar alleges that Goldman's counsel instructed him to not answer on more than three dozen occasions, and that the Arvidsons' counsel, Attorney Whalen ("Whalen"), "only objected on a handful of occasions."[6] Buchar requests that the attorneys' objections be overruled and Goldman be compelled to sit for a second deposition.[7]

---

[1] Pls.' First Amend. Ver. Compl. 3-4.
[2] Def.'s Answer & Defenses to First Amend. Ver. Compl. 8-12.
[3] Def.'s Mot. 1.
[4] Def.'s Mot. 2.
[5] Def.'s Mot. 2.
[6] Def.'s Mot. 2.
[7] Def.'s Mot. 3.

¶5        Buchar cites to *Browne v. People*[8] for the assertion that "the burden of showing the existence of circumstances justifying the recognition of the attorney-client privilege rests with the party asserting the privilege and '[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.'"[9] Buchar then cites to the District Court of the Virgin Islands' case *Addie v. Kjaer*,[10] for prospect that the attorney-client privilege may be waived if the privilege-holder asserts a claim or defense that puts the attorney's advice at issue.[11] Buchar argues that the Arvidsons disclosed written communications from Goldman to bolster their argument as to what certain key terms in the operating agreement meant and, therefore, they waived any attorney-client privilege as to those communications.[12]

¶6        Buchar argues then in the alternative, if the Court does not find there was a wholesale waiver, it should still compel disclosure because "Goldman's counsel had no standing to render objections based on attorney-client privilege" because attorney-client privilege "generally cannot be asserted by anyone other than the client"—citing again to *Browne*.[13] Buchar argues that any question posed to Goldman which Whalen, the Arvidsons' representative, did not object to should, therefore, be answered.[14] The questions in which the Arvidsons' representative joined in objecting are questions: 25, 28, 30, 39, 41, 45, 46, 48, 50, 52, 55, 57 and 59.[15] Buchar cites to *Fenster v. Dechabert*[16] for the elements of attorney-client privilege, stating they are: "(1) a communication; (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[17]

¶7        Buchar further states that the majority of questions posed and objected to by Goldman's counsel did not "implicate the privilege" as many were whether Goldman had "ever seen or read a particular document."[18] Buchar asserts that other questions asked Goldman to define generic legal terms or to provide a definition for a term used in an email that was already disclosed during the course of this litigation.[19] Buchar also states that the attorney-client privilege was improperly brought up in questions asking whether Goldman had communicated with third-parties.[20] Buchar then argues that other questions, which only had to do with whether Goldman was in possession of certain documents, also did not invoke the attorney-client privilege as they did not concern any mental impressions or client communications.[21] Finally, Buchar requests costs and fees for having to file the motion and conduct a new deposition.[22]

---

[8] 56 V.I. 207 (2012).
[9] Def.'s Mot. 3 (citing *Browne*, 56 V.I. at 207, 235).
[10] ST-04-CV-00135, 2008 U.S. Dist. LEXIS 107548 (D.V.I. Jan. 10, 2008).
[11] *Id.* at *5.
[12] Def.'s Mot. 3.
[13] Def.'s Mot. 4 (citing *Browne*, 56 V.I. at 235).
[14] Def.'s Mot. 4.
[15] Def.'s Mot. 4.
[16] SX-16-CV-00343, 2017 V.I. LEXIS 149 (V.I. Super. Ct. Sept. 27, 2017).
[17] *Id.* at *26-27.
[18] Def.'s Mot. 5.
[19] Def.'s Mot. 5.
[20] Def.'s Mot. 5-6.
[21] Def.'s Mot. 6.
[22] Def.'s Mot. 6-7.

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 4 of 15

2023 VI Super 46U

¶8      In their Opposition, the Arvidsons argue that the motion should be denied for not complying with Rule 37 of the Virgin Islands Rule of Civil Procedure.[23] The Arvidsons argue that Buchar was required to notify the Arvidsons prior to filing his Motion to Compel and that Buchar was required to complete a "meet-and-confer" regarding issues raised in the motion prior to filing the motion.[24] The Arvidsons further argue that Buchar cannot allege that Goldman lacks "standing" to assert attorney-client privilege, because "standing" as a concept in federal constitutional law does not exist under Virgin Islands law.[25] The Arvidsons cite to *United Corp. v. Hamed*[26] for this proposition.

¶9      The Arvidsons further argue that Buchar's claim that only the client in this case and not the attorney can claim attorney-client privilege is incorrect as V.I. CODE ANN. tit. 5, § 852(c) allows a lawyer or someone who was a lawyer at the time of the communication to claim the privilege.[27] The Arvidsons argue that Whalen and Goldman's counsel made objections at the start of the deposition and during specific questions and since both Goldman's counsel and Whalen represent the Arvidsons, they were making objections on behalf of the client.[28] The Arvidsons also state there can be no waiver claim because the few documents produced consisted of communications on which Goldman was simply copied on were not privileged communications, and Buchar points to no specific documents for his waiver claim.[29] Lastly, the Arvidsons argue no sanctions should be imposed as objecting to questions on the basis of attorney-client privilege is not grounds for sanctions.[30]

¶10     Buchar responds that Rule 37.1(a) of the Virgin Islands Rules of Civil Procedure explicitly exempts motions relating to depositions from the meet-and-confer requirement of Rule 37.[31] Buchar asserts that even if a meet-and-confer were required, Buchar's counsel attempted to discuss the objections at the deposition, which functionally served as a meet-and-confer.[32] Buchar reiterates that the Arvidsons waived any attorney-client privilege by placing the communications with Goldman at issue.[33] Buchar also states that he highlighted several areas of inquiry that Goldman should answer: "(1) whether Attorney Goldman had ever seen a document at issue before; (2) Attorney Goldman's interactions with third parties; and (3) whether Attorney Goldman was in possession of certain documents. None of the questions posed called for Attorney Goldman's mental impressions, or discussions he had with Plaintiffs."[34] Lastly, Buchar states that "Plaintiffs knew that Defendant had a singular opportunity to depose Attorney Goldman and any questions Attorney Goldman was incorrectly instructed not to answer would require a second

---

[23] Pls.' Opp'n 1-2.
[24] Pls.' Opp'n 2-3.
[25] Pls.' Opp'n 4.
[26] 64 V.I. 297 (V.I. 2016).
[27] Pls.' Opp'n 4-5.
[28] Pls.' Opp'n 5.
[29] Pls.' Opp'n 6.
[30] Pls.' Opp'n 6.
[31] Def.'s Reply 2.
[32] Def.'s Reply 2-3.
[33] Def.'s Reply 3.
[34] Def.'s Reply 4.

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 5 of 15

2023 VI Super 46U

deposition session . . . . Plaintiffs and/or Attorney Goldman ran the risk of erroneously asserting the attorney-client privilege" and, therefore, sanctions are appropriate.

¶11    Finally, Goldman filed a Response to the Motion to Compel, arguing that he should not be compelled to sit for a second deposition, that if he is compelled to answer questions, he can do so in writing, and that sanctions would be improper.[35] Goldman adopts the Opposition filed by the Arvidsons' litigation counsel and the arguments therein while adding additional responses.[36] Goldman argues that Buchar's Motion is untimely and an abuse of the discovery process to "improperly harass and cause undue expense to Attorney Goldman."[37] Goldman states that the information being sought is protected "by the attorney-client privilege, the attorney-work-product protection, or [is] completely irrelevant and immaterial to the claims and defenses in this case."[38] Goldman also argues that "the information they sought to obtain from [him] through various improperly used discovery devices was readily obtainable and had been provided from other sources, including but not limited to the [P]laintiffs themselves."[39]

¶12    Further, Goldman states that Buchar and counsel are engaged in a "campaign of harassment" and that "this motion is just another in a long series of improper actions intended to run up his attorney's fees and harass him."[40] Goldman argues that on July 31, 2018, Buchar unilaterally issued "an overbroad subpoena *duce tecum*" while failing to "take reasonable steps to avoid imposing undue burden or expense" on him because he previously represented the Arvidsons. Goldman objected to previous attempts by Buchar to retrieve emails sent between Goldman and his paralegal and Goldman and other clients on the grounds of the attorney-work-product privilege.[41] Goldman then retained counsel, at which point Buchar allegedly "sought to end-run the judicial process" by issuing "a deposition subpoena attempting to require Attorney Goldman to appear at a deposition on December 6, 2018, a date unilaterally chosen by defendant's counsel without consulting with plaintiffs' counsel or with Attorney Goldman or the undersigned as his counsel as to availability."[42] Goldman alleges Buchar chose this date knowing that Goldman, Goldman's counsel, and the Arvidsons' litigation counsel would not be available at that time.[43]

¶13    Goldman alleges that Buchar's refusal to meet and confer to resolve the discovery dispute or to consider alternative dates, as well as Buchar's threat of sanctions, required Goldman to incur substantial fees in preparing an Emergency Motion For A Protective Order.[44] This Court's resolution of that motion resulted in a December 5, 2018 Order directing the Arvidsons to propound on Goldman no more than ten (10) interrogatories.[45] However, Buchar served on

---

[35] Goldman's Resp. 1-8.
[36] Goldman's Resp. 1.
[37] Goldman's Resp. 1.
[38] Goldman's Resp. 1-2.
[39] Goldman's Resp. 2.
[40] Goldman's Resp. 2.
[41] Goldman's Resp. 2-3.
[42] Goldman's Resp. 3.
[43] Goldman's Resp. 3.
[44] Goldman's Resp. 3.
[45] Dec. 5, 2018 Order ("ORDERED that by December 12, 2018, counsel for Defendant shall serve on counsel for Attorney Goldman no more than ten specific interrogatories requesting information from Attorney Goldman.").

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 6 of 15

2023 VI Super 46U

Goldman thirty-six (36) separate questions or subparts which Goldman alleges "improperly sought information which was well beyond the scope of permissible discovery" such as how much the Arvidsons were billed or paid for Goldman's legal services, a complete description of all services Goldman ever rendered to the Arvidsons, the names, addresses, email addresses, and other information for all individuals and entities Goldman ever contacted while representing the Arvidsons, and all documents Goldman may have notarized for the Arvidsons.[46]

¶14     Goldman then states that, after responding to just ten (10) interrogatories and objecting where appropriate, Buchar filed a Notice of Insufficiency without allegedly ever serving it on Goldman or his counsel.[47] Buchar then reportedly delayed six (6) months "before communicating a desire to go forward with a deposition of Attorney Goldman to address the alleged inadequacies with his interrogatory responses."[48] On December 10, 2019, Goldman sat for a deposition during which he alleges "the examination went far beyond his interrogatory responses, his objections thereto, and the matters at issue in the above lawsuit[,]" such as "information about his other clients and other cases" and "documents he reviewed in the course of his representation of the plaintiffs, although many of those documents were not shown to him during the deposition."[49] Further, Goldman asserts that Buchar "improperly sought to elicit legal interpretations and legal opinions from [him], despite the fact that he was not being deposed as an expert witness and the questions asked had absolutely nothing to [sic] with any matter at issue in this lawsuit" as well as work done for the Arvidsons after the instant litigation was filed and his representation of plaintiffs in other matters.[50]

¶15     Goldman argues that he is explicitly authorized by 5 V.I.C. § 852(c) to make objections based on attorney-client privilege as to all questions relating to other clients, cases, or legal matters, as Goldman and his counsel were the only parties present authorized to make objections based on these other clients.[51] Goldman also argues that both the attorney-client privilege and attorney-work-product privilege protect what information he relayed to the Arvidsons, what documents he reviewed or how he interpreted those documents. Goldman also points out that counsel for the Arvidsons, Whalen, made a general objection based on attorney-client privilege at the outset of the deposition.[52] Goldman argues that there was no waiver of the privilege as related to any documents because the "documents plaintiffs produced . . . consisted mainly of communications on which Attorney Goldman was simply copied and communications between Attorney Goldman and Buchar's then counsel[.]"[53] Further, because "Defendant's instant Motion does not cite any specific document in making its waiver claim," Goldman argues those questions fail "as a matter of law."[54] Goldman cites to *Fenster v. Dechabert*[55] for this proposition.

---

[46] Goldman's Resp. 3-4.
[47] Goldman's Resp. 4.
[48] Goldman's Resp. 4.
[49] Goldman's Resp. 4.
[50] Goldman's Resp. 4-5.
[51] Goldman's Resp. 5-6.
[52] Goldman's Resp. 5.
[53] Goldman's Resp. 6.
[54] Goldman's Resp. 6.
[55] No. SX-2016-CV-00343, 2017 V.I. LEXIS 149, at *41 (V.I. Super. Ct. Sept. 27, 2017).

Goldman argues that Buchar can point to no specific document because there was none, any the communications produced were not privileged and, thus, there was no waiver based on the documents.[56]

¶16     Goldman concludes by arguing that neither sanctions nor a supplemental deposition is warranted because the questions asked were improper and beyond the scope of the instant litigation, as Buchar was unable to point to any "valid reason for asking the vast bulk of the questions put to [him] in the first place."[57]

## II.     LEGAL STANDARD

¶17     Discovery is governed by Virgin Islands Rule of Civil Procedure 26. Rule 26(b)(1) outlines the general scope of discovery and states: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Information within this scope of discovery need not be admissible in evidence to be discoverable."[58] Motions to compel discovery are governed in part by Virgin Islands Rule of Civil Procedure 37. Rule 37-1(a) provides governs premotion duties and states:

> Prior to filing any motion relating to discovery pursuant to Rules 26 through 37, other than a motion relating to depositions under Rule 30, counsel for the parties and any self-represented parties shall confer in a good faith effort to eliminate the necessity for the motion—or to eliminate as many of the disputes as possible.[59]

¶18     The Virgin Islands Code establishes and defines the attorney-client privilege and work product immunity in 5 V.I.C. § 852, including who may claim the privilege in 5 V.I.C. § 852(c):

> Who May Claim the Privilege. The privilege under this subsection may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client or the successor, trustee or similar representative of a corporation, association or other organization, whether or not in existence. A person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client. A lawyer is obligated to assert the privilege to protect a client who cannot assert it for a valid reason such as incapacity or death. The privilege continues even after the death of either the client or attorney.[60]

¶19     Section 852(d) lays out exceptions including the pre-existing documents exception

---

[56] Goldman's Resp. 6.
[57] Goldman's Resp. 6.
[58] V.I. R. Civ. P. 26(b)(1).
[59] V.I. R. Civ. P. 37-1(a).
[60] 5 V.I.C. § 852(c).

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 8 of 15

2023 VI Super 46U

in § 852(d)(8), which states: "Physical Evidence; Fee Arrangements, Pre-existing Documents. The privilege does not apply to physical evidence that the client provides to the lawyer; attorney fee arrangements, agreements and payments; and documents pre-existing the attorney-client relationship."[61] Section 852(9) lays out the waiver exception: "The privilege is lost if the client waives confidentiality as to one or more issues such as by disclosing privileged communications to a third party or the client or the attorney breaches a duty that is owed to each other."[62] "In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[63] Further, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[64]

¶20    Work-product immunity is governed by 5 V.I.C. § 852(e), which states:

(1) Qualified Immunity. Work product immunity may protect an attorney from disclosing to a third party some of the information the attorney creates or acquires while preparing for litigation. Work product materials may be subject to discovery if the party requesting them proves (i) a substantial need for materials, and (ii) an inability to obtain a substantial equivalent of those materials by another method.

(2) Absolute Immunity. An attorney possesses absolute immunity from disclosing work products when they divulge the attorney's "mental impressions, conclusions, opinions, or legal theories" regarding litigation.[65]

## III. ANALYSIS

¶21    Since the Arvidsons, through counsel, objected to all questions on the basis of attorney-client privilege, the Court must strictly construe this privilege and conduct an analysis of each certified question.

¶22    As a preliminary matter, the Court finds both attorneys, Whalen and Goldman, to be qualified representatives capable of asserting attorney-client privilege. Whalen, who was retained by the Arvidsons for the current litigation, was clearly a representative of the Arvidsons, capable of making attorney-client privilege objections or waiving Goldman's assertions of attorney-client privilege. Goldman, who was previously retained by the Arvidsons, was also qualified to assert attorney-client privilege on behalf of the Arvidsons with regards to questions concerning his previous legal representation, with any assertion subject to waiver by Whalen. While Whalen joined in several of Goldman's objections as voiced by Weiss, Whalen did not explicitly waive any attorney-client privilege objections.

---

[61] 5 V.I.C. § 852(d)(8).

[62] 5 V.I.C. § 852(d)(9).

[63] *Joseph v. Pricesmart LLC*, No. ST-2015-CV-00062, 2016 V.I. LEXIS 17, at *14 (V.I. Super. Ct. Feb. 29, 2016).

[64] *Samuel v. Century Hill*, 2021 VI Super 40U, ¶ 13 (internal quotations omitted) (quoting *Fenster v. Dechabert*, No. SX-2016-CV-00343, 2017 V.I. LEXIS 149 at *26 (V.I. Super. Sept. 27, 2017)).

[65] 5 V.I.C. § 852(e).

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 9 of 15

2023 VI Super 46U

¶23 Absent an explicit waiver by the Arvidsons or other circumstances, such as disclosure, the Court finds that both the objections made just by Goldman through counsel, and the objections that were also joined by Whalen, were properly asserted by a party who may claim the privilege. This is proper as Goldman would have unique knowledge of communications made by the Arvidsons in the past which Whalen might not have and, therefore, she would not know to assert the privilege. Allowing both attorneys to assert the right, while allowing the attorney currently represented by the clients to waive it where desired, protects both the client's interests and privileged communications.

## A. Deposition Questions Pertaining To Arvidsons

### 1. Questions Concerning the Scope of Goldman's Work

¶24 Buchar asked "[h]ave you done any legal work for the Arvidsons since [December 21, 2018]?"[66] which was objected to on the grounds of attorney-client privilege. As this question essentially asked whether the Arvidsons have contacted and retained Goldman for the purposes of legal assistance, it is protected by the attorney-client privilege.

¶25 Buchar then asked whether "[a]s part of your engagement for the Arvidsons, did you review certain documents?"[67] which was objected to on the grounds of attorney-client privilege. The "certain documents" were not specified or indicated in a previous question. A plain reading of the question is that Buchar is asking whether the Arvidsons ever requested Goldman to do document review, a legal service, on their behalf. As such, the question is protected by the attorney-client privilege.

### 2. Questions Concerning the V.I. Chiropractic Operating Agreement

¶26 Buchar asks Goldman whether "[y]es or no, did you review the V.I. Chiropractic Operating Agreement?"[68] which was also objected to on the basis of attorney-client privilege. Alone this question does not seem to involve a communication between privileged persons in confidence for the purposes of legal assistance, but taken within the context of the previous question asking whether Goldman was asked to review documents on behalf of the Arvidsons, it is clear this is a specific reformulation of the previous question asking whether he reviewed the operating agreement on behalf of the Arvidsons. As such, it, too, is protected by the attorney-client privilege.

¶27 Buchar inquired "[d]id you request the operating agreement for V.I. Chiropractic and all amendments as part of your engagement with the Arvidsons?"[69] Again, this question asked about a communication between privileged people in confidence for the purpose of Goldman

---

[66] 12/10/2019 Tr. at 23:14-15, Ex. A to Def.s' Mot.
[67] 12/10/2019 Tr. at 24:11-12.
[68] 12/10/2019 Tr. at 25:7-8.
[69] 12/10/2019 Tr. at 25:17-19.

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
**Memorandum Opinion and Order**
**Page 10 of 15**

2023 VI Super 46U

providing the Arvidsons with legal assistance. Buchar then asked "[d]id you ever receive any amendments to the V.I. Chiropractic Operating Agreement from counsel—from your clients?"[70] As above, the delivery or receiving of documents for review from a client is a communication that can be shielded by the attorney-client privilege.

¶28 Buchar queried "[s]o, I asked you whether you would have turned over any amendments you had in your possession of the operating agreement when you turned over the other documents to us; right. So, if you had one in your possession, you would have turned it over; right?"[71] This question was objected to on the basis of attorney-client privilege; however, this question did not pry into a communication between privileged people in confidence for the sake of legal assistance. Rather, this question concerned whether Goldman complied with a discovery request. As such, it was not protected by attorney-client privilege. Buchar then asked "I am going to represent to you that [Goldman did turn over an amendment to an operating agreement]. That's one of the documents that you turned over. Do you recall ever seeing a copy of a V.I. Chiro—of any amendments to the V.I. Chiropractic Operating Agreement?"[72] As this question also did not concern a communication, it was not protected by the attorney-client privilege.

¶29 Buchar produced an email exchange and asked "[y]ou speak in this initial email on the first page, dated June 1, 2016 at 5:00 p.m. to Rosh. You used the words, good faith exclusive negotiations and good faith negotiation. What did that mean to you in the context you are using that in this email?"[73] This was objected to on the basis of attorney-client privilege and work-product immunity. This question neither concerned work-product prepared by an attorney for litigation, nor was it a communication made in confidence between the privileged parties. It was, therefore, not protected by attorney-client privilege or attorney work-product immunity. Likewise, Buchar asked "[w]hat did you mean in your email to Rosh that you have very serious issue [sic] with the manager acting unilaterally to dissolve the company?"[74] As this question did not involve a communication between privileged people in confidence, it also did not involve an attorney's mental impressions regarding litigation. Thus, it, too, was not subject to attorney-client privilege or work product immunity. Further, the question "[d]id you read the V.I. Chiropractic Operating Agreement before sending this email?"[75] also did not pry into a communication between privileged parties or into an attorney's mental impressions regarding litigation and, as such, it was not protected by the attorney-client privilege or work-product immunity.

### 3. Questions Concerning Leasing Space

¶30 Buchar asked Goldman "[d]id you negotiate—negotiate the lease agreement between Rock City Chiropractic and Yacht Haven Grande?"[76] This question involved Goldman's communications with a third party that was not a privileged party seeking, in confidence, legal

---

[70] 12/10/2019 Tr. at 26:1-3.
[71] 12/10/2019 Tr. at 27:7-12
[72] 12/10/2019 Tr. at 27:25 – 28:1-4.
[73] 12/10/2019 Tr. at 29:24-25; 30:1-4.
[74] 12/10/2019 Tr. at 32:25 - 33:1-2.
[75] 12/10/2019 Tr. at 34:4-5.
[76] 12/10/2019 Tr. at 39:12-14.

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
Memorandum Opinion and Order
Page 11 of 15

2023 VI Super 46U

assistance. As such, this question was not protected by the attorney-client privilege. Similarly, Buchar's counsel asked "Leigh, do you know when you first reached out to anyone at Yacht Haven Grande with regard to the Arvidsons' interest in leasing space there?"[77] This question involved Goldman's communication to a third-party and, as such, it was not protected by the attorney-client privilege or work product immunity.

¶31    Buchar inquired "[d]o you recall if the Arvidsons had a realtor that represented them in this transaction?"[78] Attorneys Weiss and Whalen both objected on the grounds it may have been information Goldman received from his client but directed him to answer if he knew independently from information communicated to him by the Arvidsons. To the extent this question asked for information communicated to Goldman by the Arvidsons in confidence for the purpose of obtaining legal assistance, this question was protected by the attorney-client privilege. Buchar's counsel then asked three (3) questions whether: Goldman had ever spoken to three (3) different realtors regarding the transaction, "Charles Irons,"[79] "Kean Wiseman,"[80] and "Natasha Leinenbach."[81] Taken within the context of the previous question, to the extent the Arvidsons communicated with Goldman about a realtor and Goldman communicated with the same realtor as an agent of either himself or the Arvidsons regarding a transaction the Arvidsons were seeking legal assistance with, Goldman was protected from answering based on attorney-client privilege. However, any conversation with these realtors about any transaction where they were not acting as an agent for Goldman and/or the Arvidsons would not be protected.

### 4.  Questions Concerning A New LLC

¶32    Buchar handed Goldman an email chain on which he was copied and asked of the email: "[i]t begins, 'we just submitted names for approval.' Am I correct in assuming that those are names for the new Arvidsons' business that they are forming?"[82]  This was objected to by Weiss and Whalen on the grounds that an answer would be speculative and privileged to the extent it requires him to divulge information communicated to him by the Arvidsons for legal advice, but Weiss and Whalen permitted Goldman to answer if he has knowledge outside of those communications. Goldman stated he cannot answer because it would divulge privilege information and require him to speculate. While any claim that the privilege applies to the email must fail as it was waived by the communication being sent to multiple third parties, Goldman's speculations based on privileged communications to him were also protected.

¶33    Likewise, Buchar asked "[t]he new LLC that were—that Tygue is referring to there is the new LLC he is forming or purposes of the business he is going to be putting into this office space?"[83] Weiss and Whalen objected and directed Goldman not to speculate or to answer based on information the Arvidsons communicated to him; however they permitted him to answer if the

---

[77] 12/10/2019 Tr. at 39:21-23.
[78] 12/10/2019 Tr. at 40:22-23.
[79] 12/10/2019 Tr. at 41:10-11.
[80] 12/10/2019 Tr. at 41:16-17.
[81] 12/10/2019 Tr. at 41:22-23.
[82] 12/10/2019 Tr. at 45:1-4.
[83] 12/10/2019 Tr. at 46:8-11.

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
**Memorandum Opinion and Order**
**Page 12 of 15**

2023 VI Super 46U

LLC was identified in the email or the communication was otherwise divulged in the email. Weiss also stated this information was discoverable elsewhere from the authors of the emails themselves. As with the previous question, to the extent this question asked Goldman to speculate or answer based on communications made to him by the Arvidsons while seeking legal assistance, Goldman need not answer. If the information was otherwise stated in the email, it was waived.

¶34    Buchar also asks "[w]hat's privileged about an email Tygue is sending regarding office space?"[84] This is a question for Weiss or Whalen, the attorneys making the objections, and not Goldman. Goldman need not answer it, and Weiss and Whalen were not subjects of the deposition.

¶35    Buchar's counsel asked "Leigh, did you draft the Rock City Wellness Operating Agreement?"[85] As with the document reviewed above, the Court takes this question to mean whether the Arvidsons had ever asked Goldman to perform a legal service for them, namely, drafting an operating agreement. This question is protected by attorney-client privilege. However, if the Arvidsons stated that they had hired Goldman to draft the agreement, that privilege would have been waived. Similarly, Buchar's counsel asked "[d]id you assist the Arvidsons at all with the sale of their practice—the sale of Rock City?"[86] Again, the Court considers this question to be asking whether the Arvidsons engaged Goldman to help them sell Rock City. This question is protected by the attorney-client privilege, unless the Arvidsons had previously waived the question by divulging it already to a third party—e.g. by stating on an email that they are copying their attorney who is helping with the sale.

## 5.  **Questions Concerning Other Work**

¶36    Buchar's counsel inquired "[d]id you ever communicate with the Arvidsons' attorney in Michigan?"[87] Another attorney retained by the Arvidsons would also be a privileged party, and communications between the Arvidsons and their attorneys are likewise protected by the attorney-client privilege. Buchar's counsel asked "[w]hen was the last time you spoke with Christopher Kroblin, Marjorie or anyone from their office regarding this matter?"[88] Like the previous question, other retained attorneys are also privileged parties and communications between Goldman and new counsel concerning information communicated to them by the Arvidsons for the purposes of legal assistance is protected by the attorney-client privilege.

¶37    Buchar's counsel also queried whether Goldman is representing the Arvidsons in regards to a cross-fit gym and asked "[i]s that engagement still open, ongoing, so to speak?"[89] Insofar as the question asks Goldman to divulge currently retained services for his clients, it was protected by attorney-client privilege. The Court also finds it to be irrelevant to the current litigation, and not discoverable on those grounds as well.

---

[84] 12/10/2019 Tr. at 47:4-5.
[85] 12/10/2019 Tr. at 53:15-16.
[86] 12/10/2019 Tr. at 55:1-5.
[87] 12/10/2019 Tr. at 55:12-13.
[88] 12/10/2019 Tr. at 55:20-22.
[89] 12/10/2019 Tr. at 57:22-23.

¶38    Buchar's counsel asked "[o]ther than documents involved with the formation of Rock City, including the drafting the operating agreement, is there any other documents you prepared on behalf of the Arvidsons with regard to their dispute with the—with Dr. Buchar?"[90] Weiss and Whalen objected on the grounds of attorney-client privilege and form of the question. Insofar as this question asked what services the Arvidsons had retained Goldman to do for them that were not already disclosed to Buchar, Goldman was protected from answering on the basis of attorney-client privilege. However, if the Arvidsons had waived that information by providing it to others, Goldman could have been required to answer. Similarly, the final two (2) questions asked by Buchar's counsel, "[d]id you review any non-competes or any compete agreements on behalf of the Arvidsons?"[91] and "[d]id you—other than any work you may have done for the crossfit business, did you form any other business entities or do any other work for the Arvidsons?"[92] are also protected by the attorney-client privilege insofar as any such work was not already disclosed by the Arvidsons and, thus, waived. The Court also finds the questions to be irrelevant to the current litigation.

## B.  Deposition Questions Pertaining To Other Clients Or Goldman Generally

¶39    While objected to on the grounds of attorney-client privilege, the Court finds that questions to a third party attorney about clients not party to the litigation simply just fail the relevance test. Buchar's counsel asked "[w]hat—if there is some litigation that you handle, what's the nature of it?"[93] and "[w]hat's the nature of [the litigation Goldman is active in], is it breach of contract; is it criminal?"[94] Attorney Weiss objected, asking if Buchar was asking "specifically or generally," and also directed Goldman not to answer any questions dealing with other clients and other litigation on the grounds of attorney-client privilege. To the extent that the questions asked for specifics as to matters involving third parties, the questions were not discoverable as other litigation involving unrelated third parties is not relevant to the instant litigation. To the extent it asked about Goldman's general practice, the topic is moot as it was addressed more specifically when Buchar's counsel asked Goldman specific questions such as "[h]ave you ever litigated any partnership disputes?"[95] and Goldman then answered.

¶40    Buchar's counsel asked Goldman "[w]hat does the term good faith negotiation mean to you, Leigh?"[96] which was objected to on the grounds of attorney-client privilege and work-product immunity. As the question did not involve a communication between Goldman and others, it was not protected by attorney-client privilege. However, as the question related to Goldman's mental impressions, conclusions, and/or legal theories as to a central element of the current litigation, Goldman was protected from answering on the basis of work product immunity.

---

[90] 12/10/2019 Tr. at 58:5-10.
[91] 12/10/2019 Tr. at 59:4-6.
[92] 12/10/2019 Tr. at 59:13-16.
[93] 12/10/2019 Tr. at 15:22-23.
[94] 12/10/2019 Tr. at 17:10-12.
[95] 12/10/2019 Tr. at 17:18-19.
[96] 12/10/2019 Tr. at 33:8-9.

Likewise, Buchar's counsel asked Goldman "[w]hat does the term good faith mean to you?"[97] For the same reasoning as the previously discussed question, this, too, was protected by work-product immunity as it involves an attorney's mental impressions, conclusions, and/or legal reasoning as to a central element of the current litigation.

## III.     CONCLUSION

¶41     Plaintiffs the Arvidsons filed suit against Defendant Buchar on July 12, 2016 alleging a breach of fiduciary duty surrounding the dissolution of a medical clinic. On December 5, 2018, the Court ruled that Buchar may submit to a third-party attorney, Leigh Goldman, ten (10) interrogatory questions. Buchar subpoenaed Goldman and sought to depose him, and a deposition was held on December 10, 2019. At this deposition, the Arvidsons were represented by Attorney Whalen and Attorney Weiss assisted Goldman as counsel. During this deposition, multiple questions were objected to by Weiss and Whalen on the basis of attorney-client privilege and work product immunity, and these questions were later certified.

¶42     Buchar moved this Court on June 19, 2020, to compel Goldman to sit again at a deposition and answer the certified questions, as well as moving for sanctions. Goldman and the Arvidsons contend that the deposition of Goldman is merely for dilatory or harassment purposes and unnecessary. The sanctions will be addressed in another Order. The Court has reviewed the transcript and each certified question and has found some to be protected by the attorney-client privilege and work-product immunity, but others not to be. The Court will not compel a third-party attorney who has already complied with discovery and a previous deposition to again sit for a deposition. Rather, consistent with the Court's December 5, 2018 Order, the Court will allow Buchar to ask the questions not protected by privilege via written interrogatory, to which Goldman can reply in writing. Accordingly, it is

**ORDERED** that Defendant's Motion To Compel Responses To Certified Deposition Questions And For Sanctions, filed June 19, 2020, is **GRANTED in part** to the extent that it asks the Court to consider which certified questions are not protected by a privilege and to compel those questions to be answered; and it is further

**ORDERED** that Defendant's Motion To Compel Responses To Certified Deposition Questions And For Sanctions, filed June 19, 2020 is **DENIED in part** to the extent that it requests that Attorney Leigh Goldman be subjected to another deposition; and it is further

**ORDERED** that the Court **RESERVES RULING in part** on Defendant's Motion To Compel Responses To Certified Deposition Questions And For Sanctions, filed June 19, 2020 and Plaintiffs' Opposition To Motion To Compel Responses To Certified Deposition Questions And For Sanctions, filed July 6, 2020, with respect to the requests for sanctions; and it is further

---

[97] 12/10/2019 Tr. at 36:16-17.

*Dr. Tylur Arvidson, et al. v. Dr. William L. Buchar*
Case No. ST-2016-CV-00410
**Memorandum Opinion and Order**
**Page 15 of 15**

2023 VI Super 46U

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.[98]

DATED: 8/8/2023

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

TAMARA CHARLES
Clerk of the Court

BY: _____
DONNA D. DONOVAN
Court Clerk Supervisor: 8/10/2023

---

[98] Plaintiffs/Third-Party Defendants Dr. Tylur Arvidson and Dr. Tygue Arvidson are represented by Attorneys Christopher Allen Kroblin and Marjorie Whalen (Kellerhals Ferguson Kroblin PLLC). Defendant Dr. William L. Buchar is represented by Attorney Lisa M. Komives (Dudley Newman Feuerzeig, LLP) and *Pro Hac Vice* attorneys, John C. Kreamer (Kreamer Law Group, LLC) and Lou Karnezis (Karnezis Law Group, LLC). Attorney Leigh Goldman, a non-party deponent, is represented by Attorney A. J. Weiss (A.J. Weiss & Associates).

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

August 10, 2023 03:34 PM
ST-2016-CV-00410
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
District of St. Thomas/St. John

DR. TYLUR ARVIDSON et al,
                Plaintiff

v.

DR. WILLIAM L. BUCHAR,
                Defendant.

Case Number: ST-2016-CV-00410
Action: **Breach Of Fiduciary Duties**

# NOTICE of ENTRY
## of
## MEMORANDUM OPINION AND ORDER

**To:** Christopher A. Kroblin, Esq.      Lisa Michelle Komives, Esq.
Marjorie Beth Whalen. Esq      John C. Kreamer, Esq.
                                     Louis Nicholas Karnezis, Esq.
                                     A.J. Weiss, Esq.

Please take notice that on August 10, 2023
a(n) _____ Memorandum Opinion and Order _____
dated     August 8, 2023     was/were entered
by the Clerk in the above-titled matter.

Dated:   August 10, 2023

Tamara Charles
Clerk of the Court

By:

Donna D. Donovan
Court Clerk Supervisor